**\*NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FRANCEAU BELIZAIRE, | : | |
| Plaintiff, | : | Civil Action No. 15-6482 (JLL) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| S.D.A.G./A.A.P. BRUCE HOLMES, et al., | : | |
| Defendants. | : | |
| | : | |

**LINARES**, District Judge.

Currently before the Court is the complaint of Plaintiff, Franceau Belizaire (ECF No. 1) and Plaintiff's application to proceed *in forma pauperis* (ECF No. 1-1). Plaintiff's complaint raises several claims brought pursuant to 42 U.S.C. § 1983. Based on the information contained in Plaintiff's application to proceed *in forma pauperis*, this Court finds that leave to proceed in this Court without prepayment of fees is authorized, 28 U.S.C. § 1915, and will therefore order the Clerk of the Court to file Plaintiff's Complaint. As the Court grants Plaintiff's application to proceed *in forma pauperis*, this Court must screen Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Pursuant to the statutes, this Court must dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). As Plaintiff's complaint fails to state a claim for which relief can be granted and seeks damages from a defendant who is immune, this Court will dismiss Plaintiff's complaint without prejudice.

## I.  BACKGROUND

Plaintiff, Franceau Belizaire, is a state pre-trial detainee currently confined in the Union County Jail in Elizabeth, New Jersey.  (ECF No. 1 at 2-3).  Defendants are all prosecutors, investigators, and doctors who were either directly or indirectly involved in investigating and ultimately prosecuting Plaintiff for second degree manslaughter, a prosecution which remains ongoing at this time.  (*Id.* at 4-15).  Plaintiff makes the following allegations in his complaint.

Prior to the prosecution which Plaintiff seeks to challenge, he was already incarcerated in the Union County Jail for an apparently unrelated offense.  (*Id.* at 15).  While so incarcerated, Plaintiff was transported to the Union County Prosecutor's Office for questioning by two detectives, one of whom was Defendant Ramos.  (*Id.*).  Upon their arrival, these detectives questioned Plaintiff regarding an incident which had occurred on June 1, 2014, at a motel in Elizabeth, New Jersey, which played some part in the death of George Russo.  (*Id.* at 18, 21).  Plaintiff alleges that he was not "read his *Miranda* rights" during that interrogation, and that he requested an attorney on multiple occasions.  (*Id.*).  Plaintiff further alleges that Detective Ramos attempted to coerce him into giving a statement which she wished to record with her phone, but Plaintiff refused.  (*Id.*).  A supervisor of the detectives then entered the room and ended the interrogation because of Plaintiff's request for an attorney, and Plaintiff was transported back to the Union County Jail.  (*Id.*).  Plaintiff was thereafter charged with second degree manslaughter on or about October 15, 2014.  (*Id.*).

Following his initial appearance in court in October, Plaintiff was scheduled to again appear on November 17, 2014.  (*Id.*).  Plaintiff instead next appeared on November 3, 2014.  (*Id.*).  During that appearance, Plaintiff's attorney requested all discovery related to the

2

manslaughter charge. (*Id.* at 16). When the state failed to provide discovery by December 2014, the trial judge ordered the state to provide the relevant discovery by January 5, 2014. (*Id.*). Plaintiff, due to scheduling issues, would not appear again until June 2015. (*Id.*).

In January 2015, Plaintiff met with his attorney and was given copies of police reports, investigations reports, medical reports, and witness reports related to the manslaughter charge. (*Id.*). Plaintiff, however, was not provided with toxicology reports or the grand jury transcript, which he asserts contained exculpatory evidence, at that time. (*Id.*). Plaintiff contends that these toxicology reports may have provided information regarding the cause of the death with which he was charged, but does not allege that these reports contained information showing he was not responsible. (*Id.*).

Plaintiff's lawyer ultimately provided him with the grand jury transcripts on or about June 28, 2015. (*Id.* at 17). Plaintiff alleges that, in the police reports, there were several varying descriptions of the suspect, none of which matched him. (*Id.*). None of these descriptions, however, were offered to the grand jury. (*Id.*). Plaintiff also alleges that there was some confusion in the grand jury transcripts regarding the relationship between Defendants Ramos and Barnwell. (*Id.*). Plaintiff's main concern with the grand jury transcripts, however, appears to be that Ramos testified that although there was a video that was somehow relevant to Plaintiff's prosecution, that video had been "recorded over or deleted." (*Id.*). It is not clear what this video contained, who possessed it, who recorded it, or who was responsible for its destruction/rerecording. (*Id.*). Plaintiff, however, alleges that there was some manner of exculpatory evidence on the tape which was destroyed. (*Id.*). Plaintiff's final issue with the grand jury transcripts appears to be that there was a statement by the prosecutor, Defendant

Holmes, that "a few pages [were] removed" from some unknown document relevant to the grand jury proceedings. (*Id.* at 18). Plaintiff does not clarify from what document pages were removed, how they were relevant to his case, or how these documents were exculpatory, but again asserts that this amounts to the destruction of exculpatory evidence. (*Id.*).

Plaintiff alleges that the reports of several doctors contained in the discovery related to his criminal case do not support the conclusion that he caused the death of George Russo. (*Id.*). Plaintiff alleges that Russo underwent surgery on June 2, 2014. (*Id.*). Dr. Zaboski examined Russo before his surgery and granted him clearance to undergo surgery. (*Id.*). Zaboski apparently stated in his reports that after surgery, Russo initially was doing well and was slated for discharge from the hospital, but eventually turned for the worst and ultimately passed away approximately a week later due to respiratory failure. (*Id.*). Dr. Zaboski's report apparently also stated that, due to Russo's age and health problems, which included bronchial issues, fibroses of the lungs, irregular nodes in the lungs, and "parenchymal and pleural densities in the right lung," there was a risk of death associated with whatever surgery he underwent on June 2, 2014. (*Id.*). Based on these statements, Plaintiff asserts that Defendant Holmes was negligent in failing to probe the cause of death of Russo and acted improperly in choosing to pursue manslaughter charges against Plaintiff. (*Id.*).

## II.  DISCUSSION

## A.  Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil

4

actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee, *see* 28 U.S.C. § 1915A.   The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§1915(e)(2)(B) and 1915A because Plaintiff is a prisoner who has been granted *in forma pauperis* status and raises claims against state employees.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Indeed, "the legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).   Thus, to survive a *sua sponte* screening for failure to state a claim, the complaint must allege "'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).   Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff seeks to make claims against defendants for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Id.* at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff asserts claims for malicious prosecution,[1] for violations of his *Miranda* rights, and for the withholding or destruction of exculpatory evidence.

**1. Plaintiff's claims against Drs. Kline and Zaboski must be dismissed as Plaintiff has not pled that they were acting under color of state law**

Plaintiff attempts to make claims against two doctors, Kline and Zaboski, who treated the deceased, for violations of Plaintiff's Fourteenth Amendment rights because Plaintiff was

---

[1] Although Plaintiff does assert that he has been "incarcerated illegally" this Court does not construe him as asserting claims for false arrest and false imprisonment separate and apart from his claims for malicious prosecution because Plaintiff specifically alleges that he had already been legally incarcerated on another charge during the period where he was charged and ultimately arraigned on the manslaughter charges. *See, e.g., Smiley v. James*, No. 06-1244, 2006 WL 2347815, at *4 (D.N.J. Aug. 10, 2006) (unpublished) (stating that "there was no arrest or seizure of plaintiff because he was *already incarcerated on other charges* . . . [and t]herefore cannot establish a requisite element of a false arrest claim.").

6

ultimately charged with the death of their patient.   Plaintiff has pled no facts, however, which

suggest that these doctors, apparently private medical practitioners, were acting under color of

state law at the time that they treated Russo.[2]   A claim pursuant to § 1983 requires that "the

defendant acted under color of state law, in other words, that there was state action."   *Great W.*

*Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010).   The

actions of a private medical practitioner or hospital can only said to occur under color of state

law where those actions are "fairly attributable to the State."   *Turner v. Children's Hosp. of*

*Philadelphia*, 378 F. App'x 124, 126 (3d Cir. 2010) (unpublished) (quoting *Lugar v. Edmondson*

*Oil Co.*, 457 U.S. 922, 937 (1982)).   As Plaintiff has pled no facts which would support an

inference that either doctors' actions could be fairly attributed to the state, Plaintiff's § 1983

claims against the doctors must be dismissed without prejudice.

**2.   Plaintiff's claim that he was interrogated without *Miranda* warnings is not actionable under § 1983**

Plaintiff also asserts a claim against Detective Ramos for alleged violations of his rights

pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).   Specifically, Plaintiff alleges that

Ramos and another detective questioned him without providing *Miranda* warnings and continued

to question him after he requested a lawyer.   Plaintiff also pleads, however, that despite coercion

from Ramos, he refused to give a statement.   However, "'violations of the prophylactic *Miranda*

procedures do not amount to violations of the Constitution itself.   The right protected under the

---

[2] Unlike all other Defendants, Plaintiff does not plead that these defendants conspired with Holmes to maliciously prosecute Plaintiff.

7

Fifth Amendment is the right not to be compelled to be a witness against oneself in a criminal prosecution, whereas the 'right to counsel' during custodial interrogation . . . is merely a procedural safeguard, and not a substantive right." *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994). A violation of *Miranda* is therefore not actionable under § 1983 unless statements resulting from that violation are used against a plaintiff in his criminal trial. *See Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003); *see also Brown v. SEPTA*, 539 F. App'x 25, 28 (3d Cir. 2013). As Plaintiff made no statement, and does not allege any statement taken in violation of *Miranda* has been used against him in a criminal trial, his constitutional rights have not been violated and he fails to state a claim for relief against Detective Ramos on that basis under § 1983.

### 3.   Plaintiff's malicious prosecution claims must be dismissed as he has failed to show that he has received a favorable termination

Plaintiff also attempts to plead a claim for malicious prosecution against Defendant Holmes, and for conspiracy to maliciously prosecute against all remaining defendants other than Doctors Kline and Zaboski. To successfully plead malicious prosecution under § 1983, a plaintiff must allege that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and; (5) that plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.as a result.

*Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009). There can therefore be no actionable malicious prosecution claim until such time as the plaintiff receives a favorable termination of

8

the underlying criminal proceedings.  *Id.* at 186-87.  This requires that the proceeding "must have been disposed of in a way that indicates the innocence of the accused."  *Id.* at 187. Plaintiff alleges here that his prosecution for manslaughter is ongoing and has not yet resolved, and certainly has not yet resolved in his favor.  His claims for malicious prosecution and conspiracy to maliciously prosecute must therefore be dismissed without prejudice at this time.

**4.   Defendant Holmes is immune from suit to the extent that Plaintiff seeks to bring claims for failure to turn over exculpatory evidence against him**

Plaintiff's final § 1983 claims are claims asserted against Defendant Holmes[3] for the withholding or destruction of certain alleged evidence in Plaintiff's criminal trial.  Specifically, Plaintiff claims that Holmes failed to turn over a toxicology report, failed to turn over a video somehow related to Plaintiff's criminal matter which was "recorded over", and asserts a vague claim related to a statement by Holmes that certain pages were removed from an unknown document submitted to the grand jury.  "State prosecutors are afforded absolute immunity from civil suit under § 1983 for the initiation and pursuit of criminal prosecutions."  *Moore v. Middlesex Cnty. Prosecutors Office*, 503 F. App'x 108, 109 (3d Cir. 2012) (unpublished) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).  Moreover, "[a]lthough a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision

---

[3] It is unclear from Plaintiff's complaint whether he intends to assert any of these claims against the remaining defendants, who instead only appear to have been named based upon how their investigations contributed to the bringing of charges which Plaintiff alleges amounts to malicious prosecution.  As such, this Court construes Plaintiff as only raising his claims for the withholding or destruction of evidence against Defendant Holmes.

9

to withhold such evidence from the defense while functioning as an advocate for the state is protected by absolute immunity."   *Id.*; *see also Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006).   Thus, to the extent that Plaintiff claims that Holmes failed to turn over toxicology reports, the alleged video, and the "removed" pages, Holmes is absolutely immune from suit under § 1983.   To the extent that Plaintiff instead wished to claim that Holmes destroyed the video or the pages which were not submitted to the grand jury, Holmes would not be immune only to the extent that Plaintiff has asserted that the destruction of that evidence was deliberate or that the prosecutor knowingly failed to preserve that evidence.   *Yarris*, 465 F.3d at 136-37.

Here Plaintiff has made no allegation which would support an inference that Holmes deliberately destroyed evidence.   Plaintiff has provided only vague references to portions of a grand jury transcript which state that a video, which is somehow related to Plaintiff's charges, was "recorded over."   Plaintiff provides no information or allegations as to who recorded over this video, nor what was on the video.   Plaintiff has thus provided no more than a conclusory allegation that his rights were violated, and certainly nothing which suggests Holmes deliberately had the video destroyed or knowingly failed to preserve it.   As to the removed pages, Plaintiff provides even less.   There is no indication as to what document Plaintiff claims had pages removed, only that Holmes told the grand jury that a certain document presented to them had had pages removed prior to its presentation.   Plaintiff fails to allege what this document was, whether it was otherwise provided to him in discovery, whether the version, if any, provided in discovery was missing pages, or the like.   Plaintiff has provided no information which would support the supposition that this document was partially deliberately destroyed or that Holmes

10

knowingly failed to preserve the document.   Plaintiff has therefore failed to plead facts which would suggest that Defendant Holmes was not immune, and this Court will thus dismiss Plaintiff's claims for the withholding or destruction of exculpatory evidence.   Because it is possible, however, that Plaintiff could allege facts sufficient to establish deliberate destruction, this Court will dismiss these claims without prejudice.


## III. CONCLUSION

For the reasons stated above, Plaintiff's application to proceed *in forma pauperis* is GRANTED, and the complaint shall be filed.   As all of Plaintiff's claims either fail to state a claim for which relief can be granted or seek damages from defendants who are immune from such relief, Plaintiff's complaint shall be DISMISSED WITHOUT PREJUDICE.


Hon. Jose L. Linares,
United States District Judge

11